FRANK.A. SPENCE ET AL. V. W. H. FENCHLER ET AL.

No. 2559.   Decided December 8, 1915.

**1.—Jurisdiction of Supreme Court—Injunction—Interlocutory Judgment.**

The jurisdiction of the Supreme Court to review on writ of error the rulings on appeal from an interlocutory judgment refusing a temporary writ of injunction is determined by the laws in force prior to the enactment of chapter 55 of the Acts of 1913, where application for the writ was made prior to July 1st of that year.   (P. 456.)

**2.—Same.**

Though article 4644, Revised Statutes, 1911, does not expressly confer on the Supreme Court jurisdiction to review the rulings on appeal from an order of the District Court granting or refusing a temporary injunction, such jurisdiction is implied by the regulation of procedure in the Supreme Court in such cases, contained in articles 4645, 4646.   (Pp. 456-458.)

**3.—Same.**

Jurisdiction may be conferred by necessary implication from the language used as effectually as by the express terms of a statute.   (P. 457.)

**4.—Same—Statutory Construction.**

Effect should be given, when possible, to every sentence, clause, and word of a statute; all portions of it should be construed together, and that which is implied is as much a part of it as what is expressed.   (P. 457.)

**5.—Same—Statutes Construed Together.**

Articles 4644, 4645, 4646, Revised Statutes, 1911, conferring jurisdiction on the Supreme Court to review appeals from orders granting or refusing temporary injunction, are not in conflict, but in harmony with article 1521, wherein its jurisdiction is limited to cases over which the Courts of Civil Appeals have appellate, but not final jurisdiction.   (P. 458.)

**6.—Same—Latest Enactment—General and Specific Subjects.**

Articles 4644, 4645, 4646, Revised Statutes, 1911 (Act of April 22, 1909, Laws 31st Leg., p. 354), giving jurisdiction to the Supreme Court by writ of error to review appeals from orders refusing injunctions, are later expressions of the legislative will than article 1591, Revised Statutes, 1911, par. 6 (Act of April 13, 1892, Laws 27th Leg., p. 26), making the decision of the Court of Civil Appeals final and forbidding allowance of writ of error in all cases of appeal from interlocutory orders.  Also they deal narrowly and specifically with appeals from interlocutory orders in injunction cases only, and hence prevail over article 1591, which applies to interlocutory orders generally.   (P. 458.)

**7.—Brief—Proposition—Statement.**

Propositions in briefs which are not followed by the necessary statements do not require consideration.   (P. 459.)

**8.—Certiorari—Findings of Trial Court.**

No abuse of the discretion of the court appeared from its refusal of certiorari to bring up and incorporate in the record findings of law and fact filed by the trial court, where these, if so incorporated, could not change the result.   (P. 459.)

**9.—Same.**

Appeal from an order refusing a temporary injunction being taken and briefs filed, findings of law and fact afterwards made by the trial court and

sought to be brought up by certiorari showed nothing material to the issue by a finding that an ordinance of a city segregating prostitutes destroyed the equity of plaintiff's bill for injunction against renting houses to prostitutes within the limits specified. The finding was not responsive to any material issue in the case, and inhered in the order refusing the injunction on verified pleadings showing the facts.   (P. 459.)

### 10.—Injunction—Appeal.

In an appeal from an order refusing a temporary injunction on the respective pleadings of plaintiff and defendant, without statement of facts, bills of exception, conclusions of law and fact, or rulings made on demurrer, the equities of the parties were to be tested by their pleadings and verification; and the judgment should be affirmed unless it was one which the court could not properly render thereon. But where the case made by complainant was clear he was entitled to the injunction as matter of right.   (P. 459.)

### 11.—Injunction—Disorderly House—Injury to Complainant.

A citizen seeking, under articles 4689, 4690, Revised Statutes, 1911, to enjoin the maintenance of bawdy houses and disorderly houses, not being, under the terms of the statute, "required to show that he is personally injured by the acts complained of," he need not allege damage to him or his property, as he must have done when proceeding independently of the statute and appealing only to the general equity powers of the court. The word "injured" in the statute embraces damages to property.   (P. 461.)

### 12.—Injunction—Bawdy and Disorderly Houses—Pleading.

A verified petition showing that defendants maintained bawdy houses and disorderly houses, the allegations of which were not specifically traversed, the answer being by unsworn general denial and by verified pleas in confession and avoidance, entitled the complainant to a temporary injunction against the bawdy houses (Rev. Stats., arts. 4689, 4690) unless the proviso in article 4689 with reference to segregation of such houses by city ordinance be held to be valid. It also entitled him to such injunction against disorderly houses other than bawdy houses, irrespective of the validity of such proviso.   (Pp. 460-462.)

### 13.—Same.

Answers of defendants to a verified bill charging them with maintaining bawdy and disorderly houses against which plaintiff sought injunction did not traverse the facts alleged except by unverified general denial; but averred (1) that the part of the city in question had been used for such purposes for more than twenty years and that complainants bought their property therein with knowledge of that fact; and (2) that the city, by authority of its charter, had segregated bawdy houses within the limits in question. Held, that such special pleas did not deny the facts alleged by complainant nor meet the equity of his bill.   (P. 462.)

### 14.—Same—Citizenship of Complainants.

The right of private action for injunction under articles 4689, 4690, Revised Statutes, 1911, is given only to citizens of the State and such citizenship should be alleged. But pleadings describing them as "of the city, county, and State" in question and as suing "for themselves and other citizens" are a substantial allegation of such citizenship.   (Pp. 462, 463.)

### 15.—City Charter—Ordinance—Segregation of Prostitutes.

Whether the powers conferred on the city of El Paso by its charter authorized the segregation of prostitutes within defined limits therein, and whether the ordinances of the city here considered sought to so accomplish such segregation as to legalize their residence therein is questioned but not decided.   (P. 464.)

### 16.—Statute—Proviso—Injunction—Disorderly House.

The proviso to article 4689, Revised Statutes, 1911, is not invalid because not embraced in the title to the Act by which it was created, Act of April 18, 1907, Laws 30th Leg., p. 246. Nor is it invalidated by the second proviso of article 4690, which refers to the first proviso of that article, not to the proviso in article 4689. Ex parte Allison, 99 Texas, 455; Lane v. Bell, 53 Texas Civ. App., 213, followed.   (P. 465.)

### 17.—Statute—Construction—Proviso—Injunction—Disorderly and Bawdy Houses.

The intention of the proviso to article 4689, Revised Statutes, 1911, was to exempt from liability to injunction bawdy houses situated within the limits to which such houses had been segregated by the ordinances of a city authorized by its charter to create such segregation, and under the view of legis·lators in its original enactment and in carrying it into the Revised Statutes (a mistaken one as shown by subsequent decisions, Brown Cracker & Candy Co. v. City of Dallas, 104 Texas, 290, and other cases) that segregation would be lawful.   (Pp. 465-467.)

### 18.—City Ordinance—Segregating Prostitutes.

A city ordinance,. segregating prostitutes and confining them within certain limits, thereby impliedly attempting to legalize their residence and occupation there prohibited by article 500 of the Penal Code, is a suspension of such penal law by the city, which the Legislature could not lawfully authorize by charter (Constitution, art. 1, sec. 28; Brown Cracker & Candy Co. v. City of Dallas, 104 Texas, 290). And the proviso of article 4689, Revised Statutes, 1911, making the enacting clause of such article authorizing the enjoining of the maintenance of a bawdy house by private prosecution ineffective within the limits of such segregation is likewise unconstitutional and void.   (P. 467.)

### 19.—Same—Statute—Restricting the Limits of Operation.

Though it be conceded—which is not here decided—that the Legislature could restrict the limits within which a general statute, otherwise operative, should have effect, by excepting cities exercising certain charter powers from its operation, it has no power to make such restriction dependent upon the enactment by a city of an ordinance violative of the prohibition of the Constitution against suspension of the laws of the State by another power than the Legislature.   Constitution, art. 1, sec. 28.   (Pp. 467, 468.)

### 20.—Statute—Invalid Proviso.

Though a proviso in a statute be held unconstitutional and void, the remainder of the Act is not invalidated thereby unless it and the proviso are so related that the Legislature would not be presumed to have intended its enactment without attaching such proviso.   (Pp. 468-472.)

### 21.—Same—Segregation of Prostitutes.

The proviso to article 4689, Revised Statutes, 1911, being predicated on the falsely assumed power of a city, under special charter authority, to segregate and legalize prostitution within a part of its limits, it will not be presumed that the Legislature would not have enacted the article with the proviso eliminated, had its invalidity been realized.   (Pp. 468-472.)

### 22.—Injunction—Bawdy House—Pleading.

In order for a private prosecutor to maintain injunction against a bawdy house upon general principles of equity and irrespective of articles 4689, 4690, Revised Statutes, 1911, plaintiff must show damage to his property thereby; and where this, though alleged and verified, is especially traversed by verified

answer, a temporary injunction will not issue on the pleadings and their respective verification above, without further proof of such damage.    (P. 472.)

### 23.—Injunction—Criminal Act—Acquiescence.

Where the statute expressly authorizes injunction, at suit of a private citizen, to restrain an act prohibited by the penal law, plaintiff's right to such relief will not be lost or held abandoned by him by his long previous acquiescence in the continuation of the offense.    (Pp. 472, 473.)

### 24.—Disorderly House—Unlicensed Liquor Dealer—Injunction—Pleading.

A private prosecutor seeking injunction under subdivision 1 of article 4674, Revised Statutes, 1911, against selling intoxicating liquors without procuring a license must allege that defendant engaged in or pursued the business of selling, such being the terms of the statute. An allegation that such liquors are "kept for sale" on defendant's premises is not equivalent. But where the petition contained other and specific allegations showing the keeping of a disorderly house by defendant, injunction on that ground was warranted.    (P. 473.)

### 25.—Jurisdiction of Supreme Court.

The rulings of this court in McFarland v. Hammond, 106 Texas, 579, as applied to appeals from interlocutory judgments of the County Court in injunction cases are discussed in an addendum opinion by Mr. Justice Hawkins only.    (P. 474.)

Error to the Court of Civil Appeals for the Eighth District, in an appeal from El Paso County.

In an action by Spence and others against Fenchler and others the District Court refused a temporary injunction sought by plaintiffs, and they obtained writ of error upon the affirmance of this order on his appeal.

*Gunther R. Lessing,* for plaintiffs in error.—Under the Constitution of Texas, article 1, section 28, declaring that no power of suspending laws shall be exercised except by the Legislature, the Legislature has alone the power of suspending the operation of articles 359, 361, 362, 362a, 362b and 363, of the Penal Code, and the Legislature, in exercising the power must make the suspension general and can not suspend said general laws for individual cases, like El Paso, or for any particular locality as the El Paso reservation, nor delegate authority to the city of El Paso to suspend said general laws, whether adjective or substantive, or any of them of the State, as to its prostitutes within certain territory designated within its corporate limits within the State of Texas, nor has the Legislature the power of delegating the suspension of any section or proviso of said laws.    Art. 3, sec. 35, Const. of Texas; Malone v. Williams, 103 S. W., 798; Doeppenschmidt v. I. & G. N., 101 S. W., 1080; Black's Law Dict., pp. 946, 37 and 691; Covington v. City of East St. Louis, 78 Ill., 548; Gill v. Scowden, 14 Phila., 626; 25 Cyc., 164; Burrill's Law Dict.; Clark v. Eddy, 10 Ohio Dec. (Reprint), 539; 5 Words and Phrases, 4016; State v. Swan, 44 N. W., 492; Littleton v. Fritz, 65 Iowa, 488, 54 Am. Rep., 19; 1 Dillon Mun. Corp., par. 75; Const. of Texas 1876, art. 1, sec. 28; Charter of the City of El Paso, sec. 70, par. B, secs. 116 and 110; Brown Cracker & C. Co. v. City of Dallas, 104 Texas, 290, 137 S. W., 342; McDonald v. Denton,

132 S. W., 823; Penal Code of Texas, arts. 359 to 362, 363, Rev. Stats., art. 2989, sec. 3, as amended by sec. 1 of the Acts of 1909; Cooley on Const. Lim., 558; Chap. 59, Laws of 1909, entitled "Vagrancy"; Ex parte Garza, 13 S. W., 779, 19 Am. St. Rep., 845; San Antonio v. Schneider, 37 S. W., 767; Burton v. Dupree, 19 Texas Civ. App., 275, 46 S. W., 272; Coombs v. State, 38 Texas Cr., 648, 44 S. W., 854; Ex parte Patterson, 58 S. W., 1011; Ballard v. City of Dallas, 44 S. W., 864; Clark v. State, 46 Texas Cr., 566, 81 S. W., 722; Crowley v. City of Dallas, 44 S. W., 865; Ex parte Knox, 39 S. W., 670; Ex parte Wickson, 47 S. W., 643; Leach v. State, 36 Texas Cr., 248, 36 S. W., 471; Ex parte Fagg, 38 Texas Cr., 573, 44 S. W., 294; Bohnny v. State, 21 Texas Cr., 597, 2 S. W., 886; Lynn v. State, 33 Texas Cr., 153, 25 S. W., 779; Ex parte Vance, 42 Texas Cr., 619, 62 S. W., 568; Mantell v. State, 117 S. W., 855; City of Austin v. Cemetery Assn., 28 S. W., 528; Ex parte Solomon, 91 Cal., 440, 27 Pac., 757; Robinson v. Franklin, 34 Am. Dec., 625; Loeb v. City of Attica, 42 Am. Rep., 494; Hewlett v. Camp, 115 Ala., 499; State v. Godfrey, 54 W. Va., 54, 46 S. E., 185; State v. Clarke, 14 Am. Rep., 471; State v. Oleson, 26 Minn., 507, 5 N. W., 959; In re Baxter, 12 R. I., 13; State v. McCoy, 116 N. C., 1059, 21 S. E., 690. Overruled: Davis v. State, 2 Texas Cr., 425; Hatcher v. City of Dallas, 133 S. W., 914.

That portion of the Act of the Legislature of 1907, being House bill No. 10, chapter 132, article 362a, hereinbefore called "The proviso," is null and void, because said proviso is not mentioned in the title of the Act. Article 3, section 35, of the Constitution of Texas. The proviso is not calculated to carry out the declared subject in the title of said Act, and as a matter of fact is contradictory to the declared subject, is inconsistent with the subject of the Act expressed in the title, and not only repeals the Act in certain respects and under certain conditions, but is entirely a new scheme of legislation from that expressed in the title. State v. McCann, 72 Tenn. (4 Lea.), 1, 13; Anderson v. City of Wellington, 40 Kan., 173, 19 Pac., 719, 723; Singer v. Henneman, 38 Wis., 504; Hedding v. Gallagher, 69 N. H., 650, 45 Atl., 96, 98, 76 Am. St. Rep., 204; United States v. Harris, 26 Fed. Cas., 185, 193; Otto Gas Eng. Works v. Hare, 64 Kan., 78, 67 Pac., 444; Fisher v. Brower, 159 Ind., 139, 64 N. E., 614, 618; Packing Co. v. Chicago, 30 Am. Rep., 545; Minturn v. Larue, 64 U. S. (23 How.), 435, 436; City of New York v. Mt. Pleasant Cemetery Co. (N. J.), 33 Atl., 396, 397; St. Johnsbury v. Thompson, 9 Atl., 571, 573; The Laundry Cases, 22 Fed., 701, 703; Ex parte Bell, 19 Fla., 608, 614; Richards v. City of Bayonne, 39 Atl., 708, 709.

The invalidity of a proviso does not destroy a law, unless going to show that the law would not have passed without it. This proviso is special, a clause calling for specific municipal action before vitality can be given the proviso, and the void portion is incidental merely to the main statute as is specifically shown by the title of the Act, as well as by the paragraphing thereof. Art. 4689, R. S.; art. 4690, R. S.;

Sweeney v. Webb, 33 Texas Civ. App., 324, 76 S. W., 776; City of Westport v. McGee, 128 Mo., 152, 30 S. W., 523; People v. Richmond, 59 Mich., 570, 26 N. W., 770; Meyers v. State, 105 S. W., 48; Shelby v. Johnson, Dallam, 600-601; Linn v. State, 2 Texas, 321; Western Union Tel. Co. v. State, 62 Texas, 633; Lytle v. Halff, 75 Texas, 138, 12 S. W., 610; Zwernemann v. Von Rosenberg, 76 Texas, 527; Ex parte Kennedy, 23 Texas Civ. App., 79.

There are conditions under which irreparable injury need not be alleged or shown that are exceptions to the rule laid down by the court in its opinion. Thus, where an injunction is sought to abate a nuisance. The rule is even stronger where a crime has been declared a nuisance by statute. Simkins on Equity, p. 746; Railway Co. v. Tait, 63 Texas, 226; Railway Co. v. Davis, 29 S. W., 483; Barbee v. Shannon, 1 Ind. T., 199, 40 S. W., 584; Walker v. Brosius, 90 S. W., 655; Taylor v. Railway Co., 122 Fed., 148; Anderson v. Rowland, 18 Texas Civ. App., 460, 44 S. W., 911; Railway Co. v. Miller, 93 S. W., 177; Hockaday v. Wortham, 22 Texas Civ. App., 419, 54 S. W., 1094.

Where it appears that the party applying for a writ of injunction is entitled to the relief demanded, and such relief, or any part thereof, requires the restraint of some act prejudicial to the petitioner, the injunction should issue. Secs. 17, 19 and 29 of art. 1 of the Constitution of Texas, 1876; Penal Code of Texas, arts. 359-363; Rev. Stats., art. 2989, sec. 3, as amended by sec. 1 of the Act of 1909; Penal Code, art. 362b; City of Austin v. Austin Cemetery Assn., 28 S. W., 528; Lynn v. State, 33 Texas Cr., 153, 25 S. W., 779; Cooper v. City of Dallas, 83 Texas, 239; Railway Co. v. DeGoff, 110 S. W., 1006; Railway Co. v. Hall, 73 Texas, 169; Railway Co. v. Fuller, 63 Texas, 467.

Cases from other States having a constitutional guaranty like ours. that "no person's property shall be taken, damaged, or destroyed for, or applied to public use, without adequate compensation being made, unless by the consent of such person." United States Supreme Court: Chicago v. Taylor, 125 U. S., 161. Arkansas: Railway v. Williamson, 45 Ark., 429. California: Reardon v. San Francisco, 66 Cal., 492. Georgia: City of Atlanta v. Green, 67 Ga., 386. Illinois: Railway Co. v. Ayers, 106 Ill., 518; Chicago v. Collins, 175 Ill., 445, 67 Am. St. Rep., 224. Kentucky: Shinkle v. Covington, 83 Ky., 420. Louisiana: Manning v. Shreveport, 119 La., 250, 44 So. Rep., 882. Maryland: Henson v. State, 50 Am. St. Rep., 204. Mississippi: Crito v. Dohma, 13 So. Rep., 37. Michigan: People v. Mollette, 44 N. W., 962. Missouri: Householder v. Kansas City, 83 Mo., 488. New Hampshire: State v. Jackson, 42 L. R. A., 440. Nebraska: Omaha v. Struder, 22 Neb., 343; Seifer v. Rose Dillon, 19 L. R. A. (N. S.), 1018. Tennessee: Jones v. Memphis, 47 S. W., 138. West Virginia: Johnson v. Parkersburg, 16 W. Va., 402. Text-books: Wood on Nuisances, 743; 1 High an Injunctions (3rd ed.), secs. 20, 68, 272, 782 and 762, and note; 1 Dillon on Mun. Corp., secs. 373, 378 and note; Cooley on Const.

Lim., p. 558; Tied. on Limit. of Police Power, secs. 312, 433 and 434; Suth. on Stat. Con., secs. 322, 324, 370; 2 Greenleaf on Ev., sec. 46.

The allegations in appellants' petition are sufficient to entitle them to the writ of injunction for selling, storing, keeping for sale, and dispensing intoxicating liquors on the premises of appellees. Title 6, par. 1, subdiv. 2, p. 232, supplement to Sayles' Texas Civil Statutes, 1908; Paul v. State, 106 S. W., 448.

Under the Constitution of Texas, art. 1, sec. 28, providing that no power of suspending laws shall be exercised except by the Legislature, the charter of the city of El Paso of 1907, Special Acts of 1907, chapter 5, can not authorize the city council to set apart a portion of the city where lewd women may ply their vocation, and where they can not be enjoined by suit of these appellants. We submit that the express provision for the regulation and control of bawdy houses in the charter and ordinance clearly contemplates and provides for the "continued existence" of common prostitutes and bawdy houses in the reservation. State v. McCann, 72 Tenn. (4 Lea), 1, 13; Anderson v. City of Wellington, 40 Kan., 173; Hedding v. Gallagher, 69 N. H., 650, 76 Am. St. Rep., 204.

The term "regulate" implies the arrangement in proper order, when the State law absolutely prohibits bawds and bawdy houses throughout Texas. U. S. v. Harris (U. S.), 26 Fed. Cas., 185, 193. The synonyms of the word "regulate" are "to govern," "to direct," "to rule," "to conduct," implying and requiring existence. Otto Gas Works v. Hare, 64 Kan., 78; Fisher v. Brower, 159 Ind., 134; Packing Company v. Chicago (Ill.), 30 Am. Rep., 545. To "regulate" bawdy houses does not mean to prohibit them, as commanded by the State law. Minturn v. Larue, 64 U. S. (23 How.), 435, 436; City of New York v. Mt. Pleasant Cemetery (N. J.), 33 Atl., 396, 397; St. Johnsbury v. Thompson (Vt.), 9 Atl., 571, 573; The Laundry Cases, 22 Fed., 701, 703. In other words "regulate," in the charter means "provide" or "provide for" prostitutes and bawdy houses in El Paso, and not "prohibit." Ex parte Bell, 19 Fla., 608, 614; Richards v. City of Bayonne (N. J.), 39 Atl., 708, 709.

The trial court had jurisdiction and power to file in this cause the findings of law and fact, because it has jurisdiction over its own record, and may revise, alter, add to, revoke and amend the same as it sees fit during the same term in which the judgment, decree and trial was held, even after an appeal has been taken. Blum v. Wettermark, 58 Texas, 125: Ellis v. Harrison, 24 Texas Civ. App., 13, 56 S. W., 292; note, 23 Am. St. Rep., 104; Garza v. Baker, 58 Texas, 488; Bartley v. Conn, 4 Texas Civ. App., 299, 23 S. W., 383; Wood v. Wheeler, 7 Texas, 16; Sweeney v. Jarvis, 6 Texas, 39; Chambers v. Hodges, 3 Texas, 517; Puckett v. Reed, 37 Texas, 308; Milam County v. Robertson, 47 Texas, 222; Briorly v. Clark, 48 Texas, 353; Churchill v. Martin, 65 Texas, 368; Sharp v. Elliott, 70 Texas, 669; Carlton v. Miller, 2 Texas Civ. App., 619, 21 S. W., 699.

Under the decisions in Texas, as well as by virtue of article 4663, Revised Statutes of Texas, no injunction shall be dissolved before final hearing, because of a denial of the material allegations of the plaintiff's petition, unless the answer is verified. It is an analogous proposition of law that upon a hearing on notice to show cause why an interlocutory injunction should not be granted pending the final trial, that the writ should not be refused because of an unsworn general denial coupled with verified pleas in confession and avoidance, unsupported by evidence, and especially is this true where the petition shows equity and the burden is on the respondent. Simkins on Equity, p. 755; Love v. Powell, 67 Texas, 910; Hansborough v. Towns, 1 Texas, 58; Daniels v. Daniels, 127 S. W., 569; Smith v. Palo Pinto Co., 128 S. W., 1193; Chemical Co. v. Spell, 120 S. W., 577; Lone Star Lodge v. Cole, 131 S. W., 1180; Dawson v. Baldridge, 118 S. W., 593; Brightman v. Fry, 43 S. W., 60; Woodside v. Railway Co., 184 Fed., 358.

The statutes of the State of Texas require the application and answer in proceedings for an interlocutory injunction to be verified. It is true that evidence may be heard on unverified petition or answer in the proceedings on a final hearing; but the courts will not presume that evidence was introduced in support of an unverified plea, and especially is this true in interlocutory proceedings by virtue of said statutes. The presumption is that no evidence was heard unless shown to the contrary by the record. Johnson v. Daniel, 25 Texas Civ. App., 587, 63 S. W., 1033; Edrington v. Allsbrooks, 21 Texas, 186; Eccles v. Daniels, 16 Texas, 137.

The words "suing for themselves and other citizens and taxpayers of El Paso, Texas," means directly and by implication that the plaintiffs are citizens, and no other construction, can be placed upon such language, and especially is this true where defendants in error have failed to specially except. Cobbs v. Coleman, 14 Texas, 593, 45 Am. Dec., 254, 61 Am. Dec., 588; Harper v. Nichol, 13 Texas, 160; Risewick v. Davis, 19 Mo., 82; Judd v. Lawrence, 55 Mass. (1 Cush.), 531; State v. Trustees, 11 Ohio, 24; Smith v. Birmingham W. Co., 104 Ala., 315; Lumman v. Clark, 22 N. E., 113.

*Turney & Burgess, Beall, Kemp & Parker, T. A. Falvey,* and *Caldwell & Sweeny,* for defendants in error.—To give the Supreme Court jurisdiction in such cases, the appeal to the Court of Civil Appeals involving these questions must be from a final judgment of the trial court, in a case that the Court of Civil Appeals has appellate, but not final jurisdiction, and where the Court of Civil Appeals has either rendered a judgment affirming the cause, or has reversed and remanded the same. If any of those questions are involved in an interlocutory judgment or appeal, and the Court of Civil Appeals has erred in their judgment, the Supreme Court can always correct the error on an appeal from the final judgment, when rendered, but not before that time on an interlocutory order or judgment rendered in the court below, nor on any interlocutory

appeal. Act of 33rd Leg., pp. 107-108; art. 4644, Rev. Civ. Stats. of 1911; arts. 1521 and 1522, Rev. Civ. Stats. of 1911; art 1591, Rev. Civ. Stats. of 1911; art. 1997, Rev. Civ. Stats. of 1911; Waters-Pierce Oil Co. v. State, 106 S. W., 329; Linn v. Arambould, 55 Texas, 611; Freeman on Judgments, sec. 29; 3 Blackstone's Commentaries, p. 396; First Natl. Bk. of Montague v. Robertson, 85 Texas, 578; Stone v. Stone, 18 Texas Civ. App., 88, 43 S. W., 567; Pitman v. Byars, 101 S. W., 789; M. K. & T. Ry. Co. v. Allen, 107 S. W., 526.

This case was an interlocutory appeal to the Court of Civil Appeals allowed by law during the pendency of the suit before final judgment on the merits, and as to such appeals, the judgment of the Court of Civil Appeals is final and conclusive as to the law and fact, and a writ of error to the Supreme Court prohibited by law. And the judgment of this trial court not being final no appellate jurisdiction is conferred on the Supreme Court.

There being no statement of facts, bill of exceptions or conclusions of facts, the Court of Civil Appeals will examine the pleadings and the judgment and if the latter is such that could be rendered lawfully under any circumstances, will affirm the same. Whitaker v. McGhee, 61 Texas, 219.

The new statutory right to an injunction to abate a bawdy house or the sale of liquors without license when plaintiff is not personally damaged in comfort or property is given only to citizens of the State of Texas, and appellants having failed to aver that they are such citizens, the court rightfully refused them a preliminary injunction to abate the supposed bawdy house. Rev. Stats., arts. 4689, 4674; Wood v. Wagnon, 2 Cranch (U. S.), 9; Anderson v. Watt, 138 U. S., 694.

Plaintiffs having failed to aver in substance that defendants were engaged in the business of selling intoxicating liquors without first having procured the necessary license and paying the taxes required by law, the court did not err in refusing to enjoin defendants from continuing in a business in which they were not charged to be engaged. Rev. Stats., 1911, art. 4674, sec. 1.

The statutes of Texas do not require the defendants' answer, in an application for an interlocutory injunction, to be verified, and defendants' unverified general denial not having been excepted to as unverified, it was sufficient to allow evidence to be heard in support thereof. 22 Cyclopaedia of Law and Procedure, 933; Moses v. Risdon, 46 Iowa, 251.

The issuance of a preliminary injunction which will put restraints on defendants before the rights of the parties have been fully investigated and tried, rests solely in the discretion of the chancellor, and as a general rule his action will not be reviewed on appeal or otherwise controlled. 10 Encyc. of Pleading and Practice, 983, 988; 22 Cyc. of Law and Procedure, 746; High on Injunction, 2nd ed., vol. 2, sec. 11; Story's Equity Jurisprudence, 13th ed., vol. 2a, sec. 950a.

Equity will not at the suit of either the State or an individual abate

by injunction either a bawdy house, gambling house, or any criminal thing that does not injure property or civil rights. State v. Patterson, 14 Texas Civ. App., 465, 37 S. W., 478; York v. Ysaguaire, 31 Texas Civ. App., 26, 71 S. W., 561.

Defendants having denied under oath in their answer any injury to plaintiffs, and the trial court by its judgment having found that plaintiffs were not injured in person or property, appellants are not entitled to an interlocutory injunction. Story, Equity Jurisprudence, vol. 2 (13th ed.), p. 228, sec. 924, and note by editor.

Even if appellants ever had a right to an injunction to abate a disorderly house injurious to their property, by their long acquiescence, they abandoned their right to the drastic remedy of an interlocutory injunction. 1 Pomeroy's Equity Jurisprudence (2nd ed.), secs. 418-419; 2 Pomeroys' Equity Jurisprudence (2nd ed.), sec. 817; 1 High on Injunction (2nd ed.), secs. 7-10; G. H. & S. A. Ry. v. DeGroff, 118 S. W., 138.

The provision in article 4689, Revised Statutes, that said section shall not be in force in cities incorporated under special acts and regulating bawds by ordinance, is constitutional. Lane v. Bell, 115 S. W., 918.

If said provision in article 4689, Revised Statutes, be unconstitutional, its rejection will make the whole article 4689 invalid, as to strike it out would manifestly make the article a wholly different one from that intended by the Legislature. Ex parte Towels, 48 Texas, 427; Gustafson v. State, 40 Texas Cr., 67, 48 S. W., 518; Kimborough v. Barnett, 93 Texas, 301, 55 S. W., 120; W. U. Tel. Co. v. State, 62 Texas, 630.

In articles 4689 and 4690, Revised Statutes, it was the intention of the Legislature to give two remedies against bawdy houses, one criminal, coextensive with the State, the other by 'injunction in those parts of the State not in cities incorporated by special charters, as to which cities those articles did not apply, but the civil law remained in the same state as before their passage. Lane v. Bell, 115 S. W., 920.

Neither the Legislature of Texas by the proviso in the last part of Revised Statutes, 4689, nor the city council of the city of El Paso by the ordinance in question, suspended any part of the law of Texas. The criminal law remained in full force, but the new civil remedy of injunction, by the very terms of the law creating it, was not given in cities like El Paso. R. S., 1911, art. 4689; Lane v. Bell, 115 S. W., 920.

MR. JUSTICE HAWKINS delivered the opinion of the court.

Plaintiffs in error, hereinafter called plaintiffs, brought suit in the District Court of El Paso County, Forty-first Judicial District, against defendants in error, hereinafter called defendants, seeking a temporary and also a permanent injunction to restrain the maintenance of certain alleged bawdy houses and disorderly houses in the city of El Paso; standing near real property of plaintiffs, respectively, alleged to have been rented by defendant Fenchler to his co-defendant, Bess Montell, and others, respectively, constituting nuisances resulting in damages to

property of plaintiffs and of others similarly situated, and to enjoin the sale and keeping for sale of intoxicating liquors at a certain one of said houses without a license therefor.

Plaintiffs' petition alleges, in substance, among other things: That each of the plaintiffs owns, and is in possession of, certain described real estate in the city of El Paso, Texas; that the defendant Fenchler owns, and, through his tenants, agents and lessees, is in possession of certain other described real properties in said city, including a certain building known as "The Palace," at No. 214 Broadway Street; that defendant Fenchler, by himself, his agent or lessee, sublets or rents said building at 214 Broadway to his co-defendant, Bess Montell, who is now in possession thereof and interested therein as tenant or lessee; "that the said Bess Montell is, knowingly, keeping and running a bawdy and disorderly house on said property and premises owned by the said Wm. H. Fenchler at No. 214 Broadway Street and is knowingly permitting, aiding and abetting and interested in the same, and the houses, buildings and structures thereon situated, and the said defendants have been informed, are advised and know that said premises, to-wit, said Palace, No. 214 Broadway Street, are being kept, used and occupied as such bawdy and disorderly house, or houses"; that among the said properties of the defendant Fenchler is one in block 151 of Campbell's Addition, and that said Fenchler "is also permitting and aiding and abetting in keeping nuisances and illegal houses and places on the said last described property, either through his agents, sub-lessees or tenants, as hereinafter stated"; "that the balance of said property hereinafter described owned by said William H. Fenchler, and the structures, or houses, located on the said property (describing it), and the other property hereinabove described which is not being occupied, and is not in the possession of said Bess Montell, is being occupied, leased, and used by certain women, whose names are unknown to these plaintiffs, as bawdy and disorderly houses"; "that at the time said William H. Fenchler purchased the said property, and at the time he sub-leased and entered into contracts with the said Bess Montell, and the other parties hereinbefore referred to, he and the said Bess Montell, and the other people occupying said property knew that the said property was being used, has been used in the past, and would in future be used for such illegal purposes. These plaintiffs say, that although the said defendants have often been notified that their said property is being used, rented and kept for such illegal purposes they have nevertheless failed and refused to prevent the said keeping, renting, using and occupation of such property, premises, houses and structures so owned by them, or in their possession, for such purposes. These plaintiffs further allege that the said premises, property, houses and buildings of the said defendants are being actually and habitually used for the purposes of keeping bawdy and disorderly house, or houses, and the said defendants, and each of them, are aiding and abetting, and are interested in the same, and the maintenance and keeping thereof. Plaintiffs further aver that prosti-

tutes are permitted to resort and reside in and on the said premises for the purpose of plying their vocation, and that the said lewd women, and women of bad reputation for chastity are employed and permitted to display and conduct themselves in a lewd, lascivious and indecent manner on the said premises; that spirituous, vinous and malt liquors are kept for sale on the said property, at 214 Broadway Street, without the said defendant, or any one holding under them, having obtained a license."

The petition also alleges, "that the keeping and maintaining of said bawdy and disorderly house, or houses, upon said premises of the defendants, or any of them, is a nuisance and seriously damages and depreciates the rental value and market value of plaintiffs' property hereinbefore described, which said property is situated in close proximity and near to the said property so owned by said defendants, as hereinbefore stated; that said nuisances make the dwelling houses, buildings, edifices and tenements of these plaintiffs, and others similarly situated, unfitted for the occupancy of respectable people, and destroy the moral of these and of the neighborhood of the city, and the said immoral and illegal places drive out and turn away the respectable citizens from that vicinity, and dedicate the same to immoral and criminal purposes and greatly reduce and decrease, and will continue to so greatly reduce and decrease the rental value and market value thereof, unless the said nuisance is abated."

The petition also alleges that said bawdy and disorderly houses are located in close proximity to the principal and most frequented business section of said city and of various described buildings, and that "in utter disregard of the laws of the State of Texas, providing against the maintenance of such nuisances, the said defendants are maintaining, permitting to be maintained, aiding and abetting the maintenance on their said premises, said bawdy and disorderly house, or houses, although they well knew the existence of said laws," and that, "the said illegal and immoral houses are injurious to the public health, public peace, public safety and public morals, and are in other ways, as aforesaid, irreparably damaging the property of these plaintiffs as well as the property of other citizens and taxpayers in the city of El Paso, Texas."

The petition further alleges, "that the said defendants, and each of them, by the maintenance, permission to maintain, renting, aiding and abetting in maintenance of such bawdy and disorderly house, or houses, and by wrongfully and unlawfully setting apart and dedicating the same for such unlawful and wrongful purposes, are guilty of maintaining public, as well as private nuisances, and should be enjoined and restrained from maintaining, keeping, aiding and abetting in so keeping the same"; and that the location of said disorderly and bawdy houses, as aforesaid, "renders the property of these plaintiffs, as well as the property of other citizens and taxpayers unfit for occupation by respectable families as tenants, and prevent these plaintiffs, and others similarly situated, from improving their property and building thereon

because of the impossibility of securing good tenants; that said bawdy and disorderly house, or houses, prevent these plaintiffs, and others similarly situated, from maintaining and running business houses, stores, and rooming houses for decent and first class trade and patronage, and hamper them in securing decent and respectable girls, men and women to enter their employ, and work for them in such stores, business houses, and rooming houses, and prevent the wives and daughters of the citizens of El Paso from visiting their stores and business houses owned by plaintiffs, and other citizens of El Paso, Texas, similarly situated, to the great and irreparable injury and damage of these plaintiffs and others similarly situated."

The petition contains other allegations of present and prospective depreciation in value of and damage to said property of plaintiffs and of others similarly situated, and closes with prayer "that a temporary writ of injunction be granted by this court, restraining and prohibiting the defendants, their heirs and assigns and each of them, and any and all persons holding under them, from further maintaining, using, aiding and abetting, renting or occupying their said property, and the buildings, or building houses, tenement, or tenements thereon situated, for such illegal, wrongful and immoral purposes, and from permitting said prostitutes and women of bad reputation for chastity to display and conduct themselves thereupon in an indecent manner; that the said defendants, their heirs, assigns, their tenants and agents be restrained from further selling and keeping for sale spirituous, vinous and malt liquors on their said premises, and that they be restrained from further maintaining and permitting to be maintained on their said property, said nuisances, and that the said defendants, and each of them, be duly cited to answer herein, and that upon a hearing hereof said injunction be made permanent and perpetual, and that these plaintiffs have judgment for all costs of suit, and for such other and further relief, general and special, in equity and in law, as to the court may seem fit and proper."

Defendants' amended answer embraced the following pleas: (1) general demurrer; (2) special exception, that plaintiffs had not alleged that they had been "personally injured;" (3) general denial; (4) acquisition by plaintiffs of their properties, and long acquiescence by them, with knowledge of the facts; (5) denial of any damage to the plaintiffs' property; and (6) that bawds and bawdy houses in the city of El Paso were being regulated by an ordinance, under a special charter, which ordinance actually confines them within a certain district in said city designated in said ordinance, within which district said houses are situate.

The petition was sworn to, as was said answer, *with the exception of the general denial.* By supplemental petition plaintiffs excepted, specially, to the sufficiency of said ordinance, denied that it had been duly adopted, and alleged that, if adopted, it was adopted pending this suit, and, therefore, was *ex post facto.* The hearing upon the application

for temporary injunction was upon notice, but in chambers, "defendants appearing in person and by counsel," and the district judge made an order denying the temporary writ, from which order plaintiffs appealed to the Court of Civil Appeals, which affirmed said order.   151 S. W., 1094.

Before entering upon a discussion of the merits of this appeal we will consider, briefly, the grounds of our jurisdiction herein, as urged by plaintiffs and as combated by defendants.

Essentially, this appeal is interlocutory. Linn v. Arambould, 55 Texas, 611; Waters-Pierce Oil Co. v. State (decided by this court December 23, 1907), 106·S. W., 326; Fort Worth Improvement Dist. No. 1 v. City of Fort Worth (decided June 13, 1913), 106 Texas, 148, 158 S. W., 164.  Manifestly, the issue as to our jurisdiction herein is unaffected by the provisions of chapter 55 of the Acts of 1913, prescribing the jurisdiction of this court, the application for writ of error herein having been filed prior to July 1, 1913, when that statute became operative; consequently, that issue is controlled by pre-existing statutes.

Passing over, as unnecessary for discussion, several alleged grounds of jurisdiction, we come to plaintiffs' proposition that this court has jurisdiction over this appeal by virtue of articles 4644-5-6, Revised Statutes, 1911.  Thereon defendants join issue, insisting, (1) that those articles, even when considered by themselves alone and without reference to article 1591, Revised Statutes, 1911, do not confer upon this court appellate jurisdiction in the case at bar; and, (2) that articles 4644-5-6 should be construed in connection with and are controlled by that portion of article 1591(6), wherein it is provided that, "the judgments of said Courts of Civil Appeals shall be final in all  .  .  .  such  .  .  . interlocutory appeals as may be allowed by law."

As to the first point:

The first statute of this State which conferred upon litigants the right of appeal from an order or judgment "refusing" a temporary injunction was chapter 34, page 354, of the Acts of 1909, amending chapter CVII of Acts of 1907, which earlier statute conferred a similar right of appeal from orders or judgments "granting or dissolving" a temporary injunction.   Perry v. Turner, 108 S. W., 192.

The applicable portions of both of those statutes appear in Revised Statutes, 1911, as follows:

"Art. 4644:   Any party or parties to any civil suit wherein a temporary injunction may be granted, refused or dissolved, under any of the provisions of this title, in term time or in vacation, may appeal from the order or judgment granting, refusing or dissolving such injunction, to the court of civil appeals having jurisdiction of the case; but such appeal shall not have the effect to suspend the enforcement of the order appealed from, unless it shall be so ordered by the court or judge who enters the order; provided, the transcript in such case shall be filed with the clerk of the court of civil appeals not later than fifteen days after

the entry of record of such order or judgment granting, refusing or dissolving such injunction."

"Art. 4645: It shall not be necessary to brief such case in the Court of Civil Appeals or Supreme Court, and the case may be heard in the said courts on the bill and answer, and such affidavits and evidence as may have been admitted by the judge granting, refusing or dissolving such injunction; provided, the appellant may file a brief in the Court of Civil Appeals or Supreme Court upon the furnishing the appellee with a copy thereof not less than two days before the case is called for submission in such court, and the appellee shall have until the day the case is called for submission to answer such brief."

"Art. 4646. Such case shall be advanced in the Court of Civil Appeals or Supreme Court on motion of either party, and shall have priority over other cases pending in such courts."

Those three articles are taken, substantially, from one Act, and, obviously, are related and interdependent. We have, therefore, to consider their joint legal effect upon our own jurisdiction in the case before us, first, without reference to article 1591, and, second, in conjunction with that article, which has been upon our statute books since 1892.

It is true that article 4644, which expressly authorizes an appeal in such cases to the Court of Civil Appeals, does not mention this court; but article 4645 declares that "it shall not be necessary to brief such case in the Court of Civil Appeals or Supreme Court, and the case may be heard in the said courts," etc.; and that language well might be construed as expressly conferring appellate jurisdiction upon this court.

However, jurisdiction may be conferred upon a court by necessary implication as effectually as by express terms. It is an elementary rule of construction that, when possible to do so, effect must be given to every sentence, clause and word of a statute so that no part thereof be rendered superfluous or inoperative. Crary v. Port Arthur Ch. & Dock Co., 92 Texas, 275, 47 S. W., 967; Gulf, C. & S. F. Ry. Co. v. Fort Worth & R. G. Ry. Co., 86 Texas, 545, 26 S. W., 54; Michie's Ency. Dig. Texas Rep., vol. 15, p. 965; 1 Kent, sec. 462. Every portion of a statute should be construed in connection with every other portion, to produce a harmonious whole. Lewis' Suth. Stat. Const., vol. 2, sec. 368, and cases cited.

Another well settled rule of construction is: "That which is implied in a statute is as much a part of it as that which is expressed." Lewis' Suth. Stat. Const., vol. 2, sec. 500, and cases cited; Chase v. Swayne, 88 Texas, 218, 53 Am. St., 742, 306 S. W., 1049.

The above quoted excerpt from article 4645, in conjunction with the reference in that article to the calling of the case in the Supreme Court, and the filing of the reply brief in that court, and the specific provisions of article 4646 for advancing the case in that court, indicate, unmistakably, we think, at least by necessary implication, the legislative purpose to confer appellate jurisdiction upon this court. Those references to the Supreme Court must be given some meaning and legal effect;

they can not be treated as mere surplusage; yet, to deny that their effect is to confer jurisdiction upon this court is to render them utterly meaningless. Only upon the theory that the statute was meant to confer appellate jurisdiction upon this court was it at all reasonable for the Legislature to insert therein said provisions relating to briefing, advancing, calling and hearing such cases in the Supreme Court. Our conclusion is well supported by authorities, in addition to those already cited.

In a somewhat similar case, wherein it was contended that in the absence of language expressly and specifically conferring upon a court the jurisdiction in question such jurisdiction did not exist, the Supreme Court of Missouri said:

"We regard this contention as extremely hypercritical verbal criticism. There is no set form of words required to confer jurisdiction. To hold that this act was not a grant of jurisdiction because formal words, such as those above indicated, were omitted would be sacrificing substance to form. . . . Our imperative duty is to ascertain, if possible, the intention of the Legislature, from the language employed"; and the questioned jurisdiction was upheld. State v. Slover, 134 Mo., 10, 31 S. W., 1054, 34 S. W., 1102; Lewis' Suth. Stat. Const., vol. 2, sec. 717.

Articles 4644-5-6 are not in conflict, but are in harmony, with article 1521, Revised Statutes, 1911, which is as follows:

"The Supreme Court shall have appellate jurisdiction coextensive with the limits of the State, which shall extend to questions of law arising in all civil cases of which the Courts of Civil Appeals have appellate but not final jurisdiction."

Construing them together we hold that, unquestionably, we have jurisdiction over this appeal.

As to the second point:

As compared with article 1591, articles 4644-5-6 are not only the later expressions of the legislative will concerning final appellate jurisdiction in cases of this character, but they deal more specifically therewith, relating, narrowly, to interlocutory appeals *in injunction cases,* whereas the quoted provisions of article 1591 relate to interlocutory appeals generally.

We are unanimously of the opinion that the question of our jurisdiction herein is not controlled by article 1591.

By five propositions under two assignments of error plaintiffs complain of the action of the Court of Civil Appeals in overruling their motion for a writ of certiorari to perfect the record by bringing up the "findings of fact and of law" made by the trial judge and filed after briefs for all parties had been filed in the Court of Civil Appeals but before judgment there, said motion averring that for a special reason stated said findings were not filed until after expiration of the fifteen days allowed by law for the filing of the transcript, and that the attention of counsel had not previously been called to the omission by motion or otherwise.

Inasmuch as none of the propositions is followed by a "statement," as is required by our rule 1, said assignments are not entitled to further consideration. However, if that were waived, and if it were conceded that the motion for writ of certiorari was seasonably made, in due form, it would appear that the omitted findings, which are set out as an exhibit to said motion, which we find among the papers, were, in substance, (a) that no evidence was introduced "except possibly the exhibit to the defendants' answer setting up an ordinance of the city of El Paso," and that "said ordinance was duly passed and at the time of the hearing was an ordinance of said city," and, (b) that the ordinance "destroyed the equity in plaintiffs' bill," and it would further appear that, for reasons hereinafter stated, said findings of fact were not material because they were not responsive to any material issue in the case, and that, for the latter reason, said conclusion of law was, likewise, immaterial; and, moreover, said conclusion of law inhered in the trial judge's order denying the writ; consequently, such "findings," even though brought up and incorporated in the record, could not operate to change the result of the case; wherefore, denial of the writ of certiorari was not an abuse of discretion and did not constitute error. Gulf, C. & S. F. Ry. Co. v. Cannon, 88 Texas, 312, 31 S. W., 498; Brewster v. State, 40 Texas Civ. App., 1, 88 S. W., 858.

In considering this appeal upon its merits, we find that, as is stated in the brief of defendants in error, the record shows "no statement of facts, no bills of exception, no conclusions of law or of fact, no order of court showing what was done with the demurrers, nothing showing what took place in the court below relevant to this appeal except the above mentioned pleadings and the order of court, aforesaid, refusing the injunction, but not disclosing whether such refusal was based on the law or the facts, or both combined."

Under such circumstances, this appeal relating, solely, to a temporary injunction, the equities of the parties should be tested and compared by their pleadings and the law of the case; and, unless the judgment rendered by the Court of Civil Appeals is one which that court could not properly render, in that state of the record, we must affirm it, even though the opinion of that court may assign insufficient or erroneous reasons in support of such judgment. Love v. Powell, 67 Texas, 15, 2 S. W., 456; Hoyt v. McLaughlin, 250 Ill., 442, 95 N. E., 464; Puget Sound Natl. Bank of Seattle v. King County, 57 Fed., 433. See, also, art. 4663, Rev. Stats., 1911; Daniels v. Daniels, 127 S. W., 569; Lodge v. Cole, 131 S. W., 1180; Eason v. Killough, 1 App. C. C. (W. & W.), sec. 604.

"Where the case made out by the complainant is perfectly clear, and he has complied with all the requirements of law for the issuance of an injunction, he is entitled to the injunction as a matter of right." Cyc., vol. 22, p. 748; Beebe v. Guinault, 29 La. Ann., 795.

Applicable portions of our Penal Code, Revised Statutes, 1911, relating to bawdy houses and disorderly houses, are as follows:

"Art. 496 (359): A 'bawdy house' is one kept for prostitution or where prostitutes are permitted to resort or reside for the purpose of plying their vocation. A 'disorderly house' is any assignation house or any theater, playhouse or house where spirituous, vinous or malt liquors are kept for sale, and prostitutes, lewd women or women of bad reputation for chastity are employed, kept in service or permitted to display or conduct themselves in a lewd, lascivious or indecent manner, or to which persons resort for the purpose of smoking or in any manner using opium, or any house in which spirituous, vinous or malt liquors are sold or kept for sale, without first having obtained a license under the laws of this State to retail such liquors."

"Art. 500 (361): Any person who shall, directly or as agent for another, or through any agent, keep or be concerned in keeping or aid or assist or abet in keeping, a bawdy house or a disorderly house, in any house, building, edifice or tenement, or shall knowingly permit the keeping of a bawdy house or a disorderly house in any house, building, edifice or tenement owned, leased, occupied or controlled by him, directly as agent for another, or through any agent, shall be deemed guilty of keeping, or being concerned in keeping, or knowingly permitted to be kept, as the case may be, a bawdy house or a disorderly house, as the case may be, and, on conviction, shall be punished by a fine of two hundred dollars, and by confinement in the county jail for twenty days for each day he shall keep, be concerned in keeping or knowingly permit to be kept, such bawdy or disorderly house."

Articles 4689-90, Revised Statutes, 1911, are as follows:

"Art. 4689. The habitual actual, threatened or contemplated use of any premises, place, building or part thereof, for the purpose of keeping, being interested in, aiding or abetting the keeping of a bawdy or disorderly house, shall be enjoined at the suit of either the State or any citizen thereof. Any person who may use, or who may be about to use, or who may aid or abet any other person in the use of any premises, place or building or part thereof, may be made a party defendant in such suit; provided, that the provisions of this and the succeeding article shall not apply to nor be so construed as to interfere with the control and regulation of bawds and bawdy house by ordinances of incorporated towns and cities acting under special charters and where the same are actually confined by ordinance of such city within a designated district of such city." See Penal Code, art. 503 (362a), and art. 504.

"Art. 4690. The Attorney General and the several district and county attorneys shall institute and prosecute all suits that said Attorney General or such district or county attorney may deem necessary to enjoin such use; provided, that such suit may be brought and prosecuted by any one of such officers; and provided, further, that nothing in the above proviso contained shall prevent such injunction from issuing at the suit of any citizen of this State who may sue in his own name; and such citizen shall not be required to show that he is personally injured by the acts complained of; and the procedure in all cases brought

hereunder shall be the same as in other suits for injunction, as near as may be; provided, that, when the suit is brought in the name of the State by any of the officers aforesaid, the petition for injunction need not be verified." See Penal Code, art. 505.

The applicable portion of article 4674, Revised Statutes, 1911, relating to the illicit sale, etc., of intoxicating liquors, is as follows:

"Any person, firm or corporation in this State who may engage in, pursue, carry on, or maintain, any of the following described occupations or callings under the circumstances and conditions herein described, are hereby declared to be the creators and promoters of a public nuisance, and may be enjoined at the suit either of the county or district attorney in behalf of the State, or of any private citizen thereof.

"1. Any person, firm or corporation who may engage in or pursue the business of selling intoxicating liquors without having first procured the necessary license and paid the taxes required by law." (Acts 1907, p. 166.)

The contention of plaintiffs here is, in substance, that they are entitled, first, under (a) articles 4689-90, Revised Statutes, 1911, and (b) under the general equity powers of the chancellor, said statute aside, to an injunction against defendant Fenchler, as owner of the properties alleged to belong to him, restraining the further maintenance of said bawdy houses and disorderly houses upon any of said properties, and against his co-defendant, Bess Montell, as lessee or tenant, restraining the further maintenance of said bawdy house and disorderly house at No. 214 Broadway; and, second, under article 4674, Revised Statutes, 1911, to an injunction against both said defendants restraining the further "keeping for sale" of intoxicating liquor at No. 214 Broadway without either of said defendants having obtained a license therefor.

In treating of plaintiffs' rights to have the maintenance of said bawdy houses enjoined under articles 4689-90, we call attention to that portion thereof which provides that, in suits like this, by a citizen to enjoin the maintenance of bawdy houses and disorderly houses, "such citizen shall not be required to show that he is personally injured by the acts complained of," which language supplies, insofar as said action is based upon said statute alone, a sufficient answer to the above mentioned special exception, and to the corresponding contention that the record fails to disclose any evidence showing damage to plaintiffs or their properties by reason of the maintenance of said bawdy houses and disorderly houses. There the word "injured" should be construed as embracing *damages* to property belonging to the complaining citizen.

Upon careful consideration of all the pleadings, we have reached the following conclusions as to their effect upon so much of the case as pertains to the maintenance of "bawdy houses" and "disorderly houses," apart from the charge relating to intoxicating liquors.

(1) The petition is sufficient to show that, upon its face, if articles 4689-90, excepting the proviso in article 4689, are constitutional, plaintiffs in error are entitled, under that statute, (a) to a temporary writ

of injunction restraining further maintenance of the alleged bawdy houses, unless said proviso is valid and its legal effect, when considered in connection with defendants' allegations relating to said special charter and ordinance, is to deprive plaintiffs of the benefits of those articles, and (b) to a temporary injunction against said disorderly houses, regardless of said proviso, and whether it be valid or not.

(2)   Defendants' pleadings, aside from those relating to said special charter and ordinance by which they seek to show that under said proviso plaintiffs are not entitled to the benefits of articles 4689-90, are not sufficient to meet and overcome the allegations of plaintiffs relative to the existence and further maintenance of said bawdy houses and said disorderly houses.   The answer of defendants amounts, practically, to a plea of confession and avoidance, upon that branch of the case.   The general denial, as we have seen, is not supported by oath, and said answer does not specifically traverse the allegations, (a) that the houses and places in question are bawdy houses and disorderly houses, or (b) that defendants, respectively, are responsible for the maintenance thereof, respectively.

On the contrary, the answer avers "that for more than twenty (20) years last past that portion of the city of El Paso, El Paso County, Texas, specifically described in the copy of an ordinance of the city council of said city, marked 'Exhibit A' and made a part hereof, has been continuously used as a place of residence for bawds and as a site of bawdy houses, and was so used at the time plaintiffs and each of them acquired the premises which they claim in their petition, and plaintiffs and each of them acquired the premises claimed by them in said petition with the full knowledge of such use, and acquiesced in such use with full knowledge thereof down to the institution of said suit," and also avers, substantially, that said houses and premises of defendants are within said city, which is a municipal corporation acting under a special charter, and that said city by ordinance controls and regulates bawds and bawdy houses within its limits, and thereby actually confines them within the designated district shown by said ordinance, "and that the said property set out in plaintiffs' petition as owned or controlled by defendants is situated within the designated district as described in said ordinance."

In that state of the pleading, we think the district judge and the Court of Civil Appeals were justified in finding and holding, as we presume they did, that said places and houses are in fact "bawdy houses" and "disorderly houses," and that defendants are responsible therefor, as charged.

In avoidance of said admission and said holdings, defendants in error contend, substantially:

First:   That plaintiffs are not entitled to an injunction under articles 4689-90 because the petition does not sufficiently aver that plaintiffs are citizens of this State.

Conceding that, in the absence of proof in the record to the effect

that plaintiffs are citizens of this State, a distinct allegation of such citizenship, in the petition, was essential to support plaintiffs' cause of action when considered as based solely on articles 4689-90 and 4674, the fact remains that the petition substantially complies with that requirement of the statutes. There is, indeed, eminent authority for the proposition that, if standing by itself alone, the allegation therein that the plaintiffs are "all of the city and county of El Paso, State of Texas," is insufficient; but said allegation was immediately followed by the words "suing for themselves and other citizens and taxpayers of the city and county of El Paso, Texas." The necessary implication of the latter clause is that plaintiffs are citizens of this State. Neither Wood v. Wagnon, 2 Cranch, 9, 2 L. Ed., 191, nor Anderson v. Watt, 138 U. S., 694, 34 L. Ed., 1078, 11 Sup. Ct., 449, to which we are cited by defendants, sustains their proposition. The objection that, upon that ground, the judgment is unwarranted is without merit.

Second: That plaintiffs are not entitled to an injunction under articles 4689-90 because, under the facts pleaded and said proviso in article 4689, articles 4689-90 do not authorize any injunction to restrain the maintenance of said bawdy houses or of said disorderly houses, the effect of such injunction being to interfere with the operation of said city ordinance.

In reply, plaintiffs contend that said ordinance is not within the scope or meaning of said proviso, and therefore cannot circumscribe or limit the operation and effect of articles 4689-90, because:

(a)   Said ordinance is *ultra vires,* not being authorized by the city's special charter, and is, therefore, void; and, if the charter is intended to authorize such regulation or control of bawdy houses, the charter itself is void, because in conflict with a general law of the State.

Said charter, of which, by its terms, all courts must take judicial notice, undertakes to confer upon that city power "to regulate, control and suppress disorderly houses and houses of ill-fame; to regulate, control and suppress houses of assignation . . . ; to pass all laws to preserve the health of the city; to define, prevent and remove nuisances within the city," section 70 (b) ; "to restrain and punish vagrants . . . and prostitutes," section 110; and "to prevent and punish the keeping of all houses wherein indecent, loud or immodest dramatic or theatrical representations are given, or bawdy houses or prostitution or assignation within the city, and to adopt summary measures for the removal or suppression of all such establishments," sec. 116. (Special Laws 1907, chap. 5, p. 24.)

Said ordinance contains the following provisions:

"That it shall be unlawful for any public prostitute, lewd woman, or woman of bad reputation for chastity to occupy, inhabit, live or sleep in any house, room, or closet situated without the following limits in said city of El Paso." (Here follow the boundaries of the designated district in said city.)    Sec. 1.

"That public prostitutes or notoriously lewd women are forbidden to

stand upon the sidewalk in front of or near the premises they may occupy, or at the alleyway, door or gate of such premises or to occupy the steps thereof, or to accost, call or stop any person passing by or to walk up and down the sidewalk, or to stroll about the city streets indecently attired or in other respects so as to behave in public as to occasion scandal or disturb and offend the peace and good morals of the people." Sec. 2.

"That it shall not be lawful for any lewd woman to frequent any cabaret or coffee house or bar room and to drink therein." Sec. 3.

.   .   .

"Nothing in this ordinance shall be so construed as to authorize any lewd woman to occupy any house, room or closet in any portion of the said city of El Paso, and that nothing in this ordinance shall be so construed and it shall not in any manner interfere or prohibit the prosecution and punishment of any person or persons nor any violation of the penal laws of the State of Texas in any portion of said city of El Paso." Sec. 7.

(b) That because of conflicting provisions therein the ordinance is not susceptible of construction, and is, therefore, void.

(c) That if said ordinance is to be construed as suspending a penal law of the State, it is, for that reason, void.

In that connection defendants assert that while said ordinance has the effect of bringing said "designated district" within the scope of said proviso it does not prevent, nor seek to prevent, the operation of any penal law of the State within such district, in that said ordinance does not expressly provide for segregation or colonization of bawds and bawdy houses, but merely requires that women of the named classes shall not "inhabit, live or sleep in any house, room or closet" outside of said district; but that view is manifestly inconsistent with the general contention of defendants relating to said proviso, that is, that its effect is to deny to plaintiffs the benefit of that injunction statute, and with their own plea, under oath, "that said city of El Paso, by ordinance of said city, controls and regulates bawds and bawdy houses within said city and by ordinance of said city actually confines the same within the designated district in said city."

However, while the real purpose of that ordinance, upon its face, appears to be to control and regulate bawds and bawdy houses in the city of El Paso, and, practically, to confine them within the "designated district" of said city, we do not consider it necessary that we express any definite opinion upon that point, or as to whether said ordinance is within the powers enumerated by the charter, or, if it is, as to whether said charter is valid; because, in our opinion, it is too clear for argument, and it is also well settled by the decisions of the courts of this State, that no special charter and no ordinance thereunder, no matter what the phraseology of either or both might be, can possibly suspend, anywhere, the operation or legal effect of any general law of this State. Consequently, in view of the above quoted provisions of our Penal Code

relating to bawdy houses and disorderly houses, and of our Constitution relating to suspension of such laws, and particularly in view of the status of the pleadings in this case, it well may be conceded, in accord with the general contention of defendants, and assumed, for the purposes of this appeal, that said charter does authorize said ordinance, that the latter was regularly adopted, and, ostensibly, was in force at date of the hearing before the chancellor, and that the effect of the ordinance upon its face, and that the actual effect thereof, in practice, was to control and regulate bawds and bawdy houses and to actually confine them within said designated district in the city of El Paso, which is an incorporated city acting under a special charter. The effect, for the purposes of this appeal, and, particularly, in testing said proviso in article 4689, is to bring within the scope and meaning, and the legal effect, if any, of that proviso, said "designated district" in El Paso, and also so much of the case at bar as relates to equitable relief, under articles 4689-90, against bawdy houses.

And, upon those assumptions, it is clear that the legal and practical effect of said proviso, *if it be valid,* is to deny to plaintiffs the benefits of articles 4689-90, insofar as the alleged bawdy houses are concerned, and thus effectually to deny their right to maintain, thereunder, their action herein to enjoin said bawdy houses.

But is said proviso constitutional and valid? The opinion of the Court of Civil Appeals herein holds that it is, but we consider that holding erroneous.

That said proviso is void because not specifically mentioned in, and not embraced by, the title to said original statute of 1907, from which articles 4689-90, including said proviso, were taken, is insisted by plaintiffs; but that contention has been sufficiently answered by the Court of Civil Appeals in this case by reference to the opinion of this court in Ex parte Allison, 99 Texas, 455, 2 L. R. A. (N. S.), 1111, 122 Am. St., 653, 90 S. W., 870, under a somewhat similar statute, and to the later opinion of another Court of Civil Appeals in Lane v. Bell, 53 Texas Civ. App., 213, 115 S. W., 918. See, also: Doeppenschmidt v. International & G. N. Ry. Co., 100 Texas, 532, 101 S. W., 1080. But that point becomes practically inconsequential under our view herein that, upon other grounds, said proviso is wholly inoperative.

It has been suggested that, as affecting the right conferred by article 4689 upon a citizen to maintain a suit to enjoin a bawdy house, said proviso in that article is made inapplicable by the last proviso in article 4690; but, manifestly, that view is untenable, because the context shows that said last proviso refers to the preceding proviso in that article, and not to the proviso in article 4689. Lane v. Bell, 53 Texas Civ. App., 213, 115 S. W., 919.

In testing the validity of the proviso in article 4689 it must first be construed.

Upon careful consideration of the matter we regard it as reasonably certain that by "ordinance," as therein used, the Legislature meant one

which, upon its face, and when tested, in relation to existing general
laws of the State, by section 28 of article 1 of the Constitution of Texas,
which sententiously declares that "No power of suspending laws in this
State shall be exercised except by the Legislature," would, if enforced,
have the legal and practical effect of confining bawds and bawdy houses
to a "designated district" of a city of the defined class; and we so hold,
although it is perfectly plain that article 500 of our Penal Code, which
expressly forbids bawds and bawdy houses, was intended to extirpate
them and absolutely prevent maintenance of them anywhere and every-
where within the borders of this State, and, to our minds, it seems
equally plain that the above quoted provision of our Constitution puts
it beyond the power of the Legislature, by the enactment of a special
charter or otherwise, to authorize any municipality to suspend any gen-
eral law of this State, by ordinance or otherwise, within even a desig-
nated portion of such municipality; and, although, ordinarily, the courts
will presume that, when enacting a statute, the Legislature was familiar
with the existence and legal effect of all general laws and all provisions
of the State Constitution then in force.

Our conclusion as to what, probably, was in the mind of the Legis-
lature, controlling the construction to be placed upon said proviso, is
strengthened by the fact that this injunction statute, articles 4689-90,
which deals specifically with bawds and bawdy houses, and with dis-
orderly houses, was originally adopted in 1907 and was carried into
Revised Statutes, 1911, by an Act approved April 1, 1911, both of
which enactments, it thus appears, were prior to the decision of this
court, on May 17, 1911, in Brown Cracker & Candy Co. v. City of Dallas,
104 Texas, 290, 137 S. W., 342. The opinion therein, which was pre-
pared by former Chief Justice Brown, in discussing the effect of an
ordinance of the city of Dallas which attempted to regulate, colonize and
segregate bawds and bawdy houses within that city, pursuant to the pro-
visions of its special charter, which expressly provided that it might do
so by ordinance, pointed out the conflict between both the ordinance
and said special charter provision and said article 500 (then article
361), and held, in substance, that said ordinance and said charter pro-
vision were, alike, violative of section 28 of article 1 of our Constitution,
and, therefore, void.

The language of the opinion was:

"The antagonism between the ordinance and the law is as emphatic
as that between life and death. . . . If it be admitted that the Leg-
islature intended to confer upon the city of Dallas authority to suspend
article 361 within the district laid out, that provision of the charter
would be void, because in conflict with section 28 of article 1 of our
present Constitution. The Legislature had no authority to delegate that
power to the city."

However, it must be conceded that this injunction statute, now
articles 4689-90, was originally enacted after the decisions of Courts of
Civil Appeals in City of San Antonio v. Schneider, 37 S. W., 767, in

1896, and Burton v. Dupree, 19 Texas Civ. App., 275, 46 S. W., 272, in 1898, and after the decision of the Court of Criminal Appeals in Ex parte Garza, 28 Texas App., 381, 19 Am. St., 845, 13 S. W., 779, in 1890, and Coombes v. State, 38 Texas Cr. Rep., 648, 44 S. W., 854, in 1898, and that said Revision of 1911 was adopted after the decision, in 1910, of a Court of Civil Appeals in McDonald v. Denton, 132 S. W., 823, all of which decisions are in accord with said decision of this court in Brown Cracker & Candy Co. v. City of Dallas, supra, and all in direct opposition, in principle, to the holding of the Court of Civil Appeals in the case at bar that "the Legislature, in passing this statute (articles 4689-90)  .  .  .  had the right, under the Constitution, to so limit the extent of the statute and that it was properly done." Possibly the Legislature overlooked said previous decisions when it came to incorporate said proviso into that statute and into said Revision of 1911.

In any event we must assume that said proviso was inserted in said injunction statute, originally, upon the mistaken assumption by the Legislature that it might be within the power of towns or cities, operating under special charters, to adopt an ordinance of the character stated which would be valid and effectual in law, not merely in the sense that it had been adopted and approved in the manner and form required by law, but also in the sense that it was valid and effective when tested by the simple, yet rigid, requirements of said section 28 of article 1, although the provisions of such ordinance might be antagonistic to those of article 500, Penal Code; and we must and do presume that had said decision in said Brown Cracker & Candy Co. case been rendered prior to the adoption of the Revised Statutes, 1911, said proviso would not have been carried forward into that revision.

Applying, then, said proviso, as so construed, to the case at bar, and assuming, as above, that the El Paso ordinance is within its meaning and scope, we conclude and hold that because an ordinance of that nature and character is expressly and unequivocally inhibited by said section 28 of article 1 of the Constitution, such ordinance, at least to that extent, is inoperative, and can not and does not have the legal force or effect of suspending, anywhere, the operation or the legal effect of said injunction statute, articles 4689-90, said proviso alone excepted.

Furthermore, while the proviso does not confer upon any municipality authority to adopt an ordinance of the character outlined in said proviso, nor seek to do so, it does attempt to circumscribe and limit the operation of said injunction statute itself, in some instances under a certain defined condition, to-wit, the adoption by an incorporated town or city acting under a special charter, of an ordinance of a certain kind and legal effect, which condition, as we have found, is utterly impossible of existence or fulfillment so long as article 500, Penal Code, and section 28 of article 1 of our Constitution both stand; and, therefore, said proviso itself necessarily is inoperative and of no legal force or effect whatsoever.

It may be conceded, though we do not herein hold, that there is in

our Constitution no limitation upon the power and authority of the Legislature to restrict the operation of a statute, conditionally, by an arbitrary standard which is not obnoxious to the Constitution itself, as, for instance, by embodying therein a proviso that such statute shall not apply to any town or city operating under a special charter; still, we deny that even the Legislature has power and authority to limit or restrict the operation of any general statute which it may see fit to enact by thus relating its operation to any status or condition which that Constitution forbids, such as the existence of a municipal ordinance which attempts to suspend, within even a designated portion of any town or city of that class, a general law of the State. It follows that, while the proviso here under consideration is not unconstitutional in the sense of attempting, directly and affirmatively, to authorize or validate an ordinance which is repugnant to article 500 of the Penal Code—for it does not attempt to do either—it is unconstitutional in the sense that, with both section 28 of article 1 of our State Constitution and article 500, Penal Code, in force, it does undertake to constitute the existence of an ordinance of that character, under a special charter, a conditional territorial limitation or restriction upon the operation of this injunction statute itself.

Consequently, the proviso being thus eliminated from consideration, the remaining portions of articles 4689-90 are to be treated as continuously applicable to every portion of the State; wherefore they should be applied and enforced in this case, unless they be found to be so tainted by said proviso as to render them unconstitutional.

We do not think they are so tainted.

In said statute, articles 4689-90, as a whole, we find nothing to indicate that the Legislature would not have enacted the other portions thereof into law had it known that said proviso would be held to be inoperative in view of article 500, Penal Code, and section 28 of article 1 of our Constitution. That seems very clear as to at least so much of it as relates to disorderly houses, which are not mentioned in said proviso.

Evidently the general purpose of the Legislature was to provide specifically, *by statute,* for the exercise of equity jurisdiction, in aid of criminal jurisdiction, in the total suppression of bawdy houses and of disorderly houses, whenever and wherever, within this State, it might, at the time of the action, be illegal to maintain them. The proviso is distinctly severable from all other portions of the statute, and is in the nature of an exception to the rule there being prescribed with reference to bawdy houses generally, and is predicated upon assumed specific municipal action, and, therefore, could hardly have been the controlling factor in the consideration of the lawmakers. The principal objective was, not to relieve, by the proviso, from the operation of the statute, in certain instances, under a certain condition which we hold to be impossible of fulfillment, but by statute to release and direct against bawdy houses and disorderly houses, and those responsible for maintenance thereof, the lightning which rests in the bosom of equity, in order that

its swift and effective processes may aid, unquestioned, in the suppression of an evil which our criminal law had long denounced but had not eradicated.

That the status of said proviso is a subordinate one is evident from the fact that "a proviso contained in the same clause or in a subsequent clause of the statute is a matter of defense and need not be negatived by the plaintiff seeking relief given by the statute." Lane v. Bell, 53 Texas Civ. App., 213, 115 S. W., 919, citing Am. Dig. Cent. Ed., vol. 39, p. 1093, and cases therein mentioned.

In discussing the effect of an unconstitutional provision upon the remaining portions of a statute, an able writer said:

"A statute may contain some such provisions, and yet the same act, having received the sanction of all branches of the Legislature, and being in the form of law, may contain other useful and salutary provisions, not obnoxious to any just constitutional exception. It would be inconsistent with all just principles of constitutional law to adjudge these enactments void because they are associated in the same act, but not connected with or dependent on others which are unconstitutional. Where, therefore, a part of a statute is unconstitutional, that does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it can not be presumed the Legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section; for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained." Cooley's Con. Lim., 215; 1 Lewis' Suth. Stat. Const., p. 583.

That view has been uniformly upheld by our decisions.

In Galveston, B. & C. N. G. Ry. Co v. Gross, 47 Texas, 429, this court, through Associate Justice Gould, said:

"But, beyond question, the leading object of the law was constitutional.  . . .  If the clause that follows as to lands 'hereafter granted' be unconstitutional and be rejected, there is still left the body of the law, comprehensive enough in its terms to require all land certificates thereafter issued to such companies to be alternate certificates. There would seem to be no difficulty in striking out the clause objected to; for that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent. (Cooley's Con. Lim., 178.)  . . .  Rejecting the clause in regard to future grants, sufficient remains to accomplish the object."

Kleiber v. McManus, 66 Texas, 48, 17 S. W., 249, involved a question as to the constitutionality of article 1016, Revised Statutes, 1879, which provided that, "The said court (meaning Supreme Court), or any judge thereof, in vacation, may issue the writ of mandamus to compel a judge of the district court to proceed to trial and judgment in a cause, agreeably to the principles and usages of law, returnable to the Supreme Court on or before the first day of the term, or during the session of the same, or before any judge of said court, as the nature of the case may require."

Therein the court held, in substance, that the last two clauses, "or before any judge of said court, as the nature of the case may require," were violative of a certain provision of the Constitution of this State as it then stood, but that the remaining portions of said statute were, nevertheless, valid; the language of the court, through Mr. Justice Robertson, being as follows:

"The appellate power is vested by the Constitution in the Supreme *Court*, and not in the several judges. The attempt in the last two clauses of the article to confer this power upon 'any judge of the said court,' will not defeat the purpose of the legislation to confer warranted jurisdiction upon the *court*, if that purpose is declared in other parts of the statute. We may, therefore, discard the two last clauses in determining the effect of the statute; what is left is complete without them. On this principle, the Act of May 10, 1840, Paschal's Digest, article 469 et seq., was given effect by ignoring the void features. Thomas v. State, 9 Texas, 333; Miller v. Holtz, 23 Texas, 141."

The rule as stated by Judge Cooley was quoted approvingly and applied in an opinion by Judge Stayton, afterward Chief Justice, in Western U. Tel. Co. v. State, 62 Texas, 630. To the same effect is the following language of the same learned judge, in Lytle v. Halff & Bro., 75 Texas, 128, 12 S. W., 610:

"The leading purpose of the act was to establish two judicial districts and thus secure the holding of two District Courts in the county, and the parts of the act claimed to be in conflict with the Constitution are not so inseparably connected with that part of the act we hold valid as to require a holding that the entire act must fall did we hold some of its provisions in conflict with the Constitution. Nor are the provisions as to legality of which there may be question such as to induce the belief that the Legislature would not have passed the act with these omitted."

The principle which we apply herein was well stated in Zwernemann v. Von Rosenberg, 76 Texas, 522, 13 S. W., 485, wherein this court, through Associate Justice Gaines, afterwards Chief Justice, said:

"The rule for the construction of statutes in partial conflict with the Constitution is, that if the portion repugnant to the fundamental law can be stricken out and that which remains is complete in itself and 'capable of being executed in accordance with the legislative intent it must be sustained.' Ex parte Towles, 48 Texas, 421, quoting Cool. on

Const. Lim., 178. If the unconstitutional provision be but incidental to the main purpose and be not essential to give effect to the statute, such part may be rejected, leaving the remainder to stand."

In Texas & P. Ry. Co. v. Mahaffey, 98 Texas, 392, 84 S. W., 646, this court, through then Chief Justice Gaines, said:

"It is settled law and now a familiar rule, that where a statute contains an unconstitutional provision and another which, if standing by itself would be valid, the latter will be given effect, provided they are so clearly independent of each other that the court can say that the Legislature would have passed it, if the former had been omitted. On the other hand, if they be so connected one with the other, or so dependent one upon the other, that it is apparent that the Legislature would not have passed the act except as a whole, then the entire statute must fall."

The old Court of Appeals of this State, in an opinion by White, then presiding judge, said:

"It is true our code denounces the penalty against any person selling intoxicating liquors, after the votes have determined that 'the sale or exchange' shall be prohibited (Penal Code, article 378), and it is also true that an election can only be held to prohibit the 'sale' (Revised Statutes, article 3227), and that if the election were ordered to prohibit 'the sale and exchange' or the 'exchange,' it would pass. (Steele's Case, 19 Texas Ct. App., 428). Yet, when a penal law prohibits two or more acts (e. g., a sale and an exchange), the one valid and constitutional and the other not, it may and will be held valid and constitutional, and can and will be enforced, as to that portion which is valid and constitutional. Holly v. The State, 14 Texas App., 506.)" Ex parte Kennedy, 23 Texas App., 77.

In other jurisdictions the rule above stated is generally recognized and applied as sound. 36 Cyc., p. 976, etc. In City of Westport v. McGee, 128 Mo., 152, 30 S. W., 523, the Supreme Court of Missouri, in dealing with a statute authorizing extension of city limits, providing that "all agricultural or pastoral lands included within the corporate limits of such city shall be exempt from taxation for city purposes until they have, by recorded plats or sale, been reduced to tracts or lots of five acres or less," held that said proviso, "violates the plain mandate of the Constitution," but that "the power of extension in this charter was not so dependent upon it that an ordinance incorporating defendant's lands within the city should be held void."

People v. Richmond, 59 Mich., 570, 26 N. W., 770, arose under a statute which contained the proviso "that in all cities and incorporated villages the common council may, by ordinance, allow the saloons and other places where said liquors shall be sold, to remain open not later than 10 o'clock on any week-day night." The defendant claimed "that the proviso was bad as giving cities and villages the power to dispense with general laws, and that its invalidity affected the whole law." Therein the Supreme Court of Michigan said: "It is hardly necessary

to say that invalidity of the proviso does not destroy the law, unless going to show that the law would not have been passed without it. No such idea is suggested by this proviso."

Upon the whole, we are of the opinion that, excepting said proviso, articles 4689-90 are clearly good against all attacks made against them,. on constitutional grounds, in the case at bar, and that, thereunder, in the light of the record before us in this case, plaintiffs are entitled to a. temporary writ of injunction, enjoining said alleged "bawdy houses," including said house at No. 214 Broadway.

Moreover, even were it conceded and held that, as contended by defendants, said proviso of article 4689 is constitutional and valid, and that its legal effect is to deny to plaintiffs the right to maintain their action herein under articles 4689-90 against the alleged "bawdy houses" within said designated district in the city of El Paso, that would not be to deny to plaintiffs their right to maintain, under those very articles, that branch of this suit wherein they seek to enjoin said alleged "disorderly houses." In this connection it will be noted that our statutes denounce "disorderly houses" as well as "bawdy houses," defining them separately and differently, and that said proviso in article 4689 makes no reference whatever to "disorderly houses," and therefore, even if it be valid and fully operative, that proviso can not be held to stop or stay, in any manner or to any extent whatsoever, the operation of that injunction statute in its application to "disorderly houses." From what has been said. above it follows that, beyond all cavil, plaintiffs are entitled, under articles 4689-90, to a temporary injunction against said "disorderly houses," including said house at No. 214 Broadway. This feature of the case seems to have been overlooked.

Third: That plaintiffs are not entitled to an injunction under the general principles of equity, aside from articles 4689-90, against said' bawdy houses and disorderly houses, because said answer under oath traverses the allegations of the petition concerning damage to the property of the plaintiffs and of others similarly situated, and there is in the record no evidence of any damage to any of said properties.

Upon that point we think it is sufficient to say that, inasmuch as we hold herein that articles 4689-90 extend to every citizen of Texas a clear, broad and effectual remedy by injunction against all "bawdy houses" and against all "disorderly houses" it becomes unnecessary for us, in this appeal, to go further and determine whether plaintiffs in error have or have not shown themselves entitled, otherwise, and under the general principles of equity jurisdiction, to all or any of that relief..

Fourth: That even though plaintiffs were at one time entitled to an injunction to abate said disorderly houses, nevertheless, by long acquiescence, they abandoned that right. In support of that proposition they cite several text writers and the decision of this court in Galveston, H. & S. A. Ry. Co. v. DeGroff, 102 Texas, 433, 21 L. R. A. (N. S.), 749, 118 S. W., 134, none of which authorities is applicable to an action under a statute which expressly authorizes an injunction at

the suit of any citizen to restrain an act which is prohibited by a penal statute. The contention is overruled.

There remains to be considered the other branch of this case, which relates to intoxicating liquors. Defendants contend:

Fifth: That plaintiffs are not entitled to an injunction, under subdivision 1 of article 4674, to restrain defendants from further selling and keeping for sale spirituous, vinous and malt liquors at 214 Broadway, because there is neither allegation nor proof that defendants, or either of them, is *engaged in or pursuing,* there, *the business of selling intoxicating liquor;* an integral part of that contention, and the holding of the Court of Civil Appeals, upon that point being to the effect that article 4674 does not authorize an injunction to restrain the mere "keeping for sale" of intoxicating liquors "without having first procured the necessary license and paid the taxes required by law."

Plaintiffs' petition does, indeed, include the prayer that defendants "be restrained from further selling and keeping for sale spirituous, vinous and malt liquors on their said premises"; but the only specific allegation which fairly may be considered as a predicate therefor is the one which charges merely, "that spirituous, vinous and malt liquors are kept for sale on the said property at 214 Broadway Street, without the said defendants, or any one holding under them, having obtained a license." The petition as a whole contains no distinct averment that defendants, or either of them, did "engage in," or did "pursue," "the business of selling intoxicating liquor without first having procured the necessary license." Moreover, the above quoted specific allegations relating to intoxicating liquors are not materially strengthened, insofar as any action under article 4674 is concerned, by the preceding allegations that defendants' premises are "disorderly houses," inasmuch as the statutory definition of a disorderly house, set out in article 496 of our Penal Code, includes any house in which liquors are "kept for sale," as well as "any house in which spirituous, vinous or malt liquors are sold," without first having obtained a license under the laws of this State to retail such liquors. However, said specific allegations relating to liquors, as well as the preceding general allegations of the petition, do clearly and distinctly charge that said house at No. 214 Broadway is a "disorderly house," and, consequently, in the present status of this case, plaintiffs clearly are entitled, under articles 4689-90, to have it temporarily enjoined as a "disorderly house."

It is, therefore, practically immaterial, and we need not now determine, whether plaintiffs are entitled to have the *keeping for sale* of intoxicating liquors at No. 214 Broadway temporarily enjoined under the provisions of article 4674, also.

The judgment of the Court of Civil Appeals and the order of the district judge denying the temporary writ of injunction herein are reversed, and this cause is remanded to the District Court with instructions to proceed therein in accordance with this opinion.

*Reversed and remanded with instructions.*

ADDENDUM BY ASSOCIATE JUSTICE HAWKINS ONLY.

Besides what appears in the opinion of the court in this cause, from which reference to the hereinafter mentioned point was eliminated to avoid introducing therein any feature upon which exists a difference of opinion among its members, this writer considers it his duty to say here, individually, and for himself alone:

(1)    Although, personally, still of the views expressed by him, upon the subject of jurisdiction, in his dissenting opinion in McFarland v. Hammond, 106 Texas, 579, 173 S. W., 645-660, he nevertheless fully recognizes the controlling effect of the opinion of the majority therein, and, as in duty bound, and as a matter of course, officially yields obedience to it as an authoritative declaration of the law of the land upon that subject, and believes that, wherever applicable, it should be duly applied and enforced, accordingly.

(2)    He believes that the logic or reasoning of the majority opinion in that County Court case, which controlled the decision therein dismissing it for want of jurisdiction, is as applicable in this District Court case, both being interlocutory appeals authorized by the same interlocutory injunction statute, articles 4644-5-6, Revised Statutes, 1911, which is as much later than the subdivision of article 1591, Revised Statutes, 1911, relating to County Court cases (Sub. 1), as it is later than the subdivision of that article relating to interlocutory appeals (Sub. 6), said injunction statute, articles 4644-5-6, in this writer's personal view of the matter, itself directly conferring upon this court appellate jurisdiction over all cases within its purview.

(3)    He also believes that, if applied to the case at bar, said logic or reasoning of the majority in McFarland v. Hammond would support defendants' contention that article 1591, Revised Statutes, 1911, controls articles 4644-5-6, and that the inevitable result would be that this appeal, also, would be dismissed for want of jurisdiction.

(4)    This addendum is not intended to reopen or reargue the point, but merely to state and explain, as briefly as possible, this writer's individual view as to the applicability in this case of the law affecting this court's jurisdiction as established by said earlier decision.

Filed December 8, 1915.